**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 23 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

BRIAN KELLY,

      Plaintiff-Appellee-
      Cross-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 12 OF OKLAHOMA COUNTY,
OKLAHOMA,

      Defendant-Appellant,


    and

VICKI SIMPSON, individually and in
her official capacity,

      Defendant-
      Cross-Appellee.

Nos.  02-6331 and 02-6339
(D.C. No. CIV-01-1267-HE)
(W.D. Okla.)

ORDER AND JUDGMENT   *

Before  **EBEL** , **PORFILIO** , and **McCONNELL** , Circuit Judges.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

In this 42 U.S.C. § 1983 action, defendant-appellant Independent School District No. 12 of Oklahoma County, Oklahoma (School District) appeals the district court's entry of summary judgment in favor of plaintiff-appellee Brian Kelly on his procedural due process claim. Kelly cross-appeals the district court's entry of summary judgment in favor of defendant Vicki Simpson on his procedural due process claim on the basis of qualified immunity. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm the order entered by the district court on August 7, 2002 and the amended judgment entered by the district court on August 15, 2003 in all respects. *See* Aplt. App. at 192-99; R., No. 55 at 1-3.

I.

Kelly was employed by the School District as a high school teacher for the 2000-01 school year. Simpson was the principal at the high school where Kelly taught. In addition to entering into an employment contract pertaining to his teaching position, Kelly and the School District entered into a separate contract entitled "Certified Extra Duty Assignment Contract" (Contract). *See* Aplt. App. at 75. Under the terms of the Contract, Kelly was assigned the extra duties of

head football coach and assistant wrestling coach for the 2000-01 school year, and he was to be paid a total of $9,778 for performing the coaching duties. *Id.* The Contract further provided that the School District "reserves the right to terminate this extra duty assignment and the compensation for such assignment: a. Without notice at any time for cause; or b. On 30 calendar days written notice to Employee without cause." *Id.*

On October 30, 2000, a referee ejected Kelly from a junior varsity football game for alleged misconduct. Because of his alleged misconduct during the game, the School District terminated Kelly's coaching assignments "for cause," and without any prior notice, on October 31, 2000. [1] Despite the termination, the School District paid Kelly all of the compensation it had agreed to pay him under the Contract for the football coaching assignment. The School District also paid Kelly a pro rata portion of the compensation it had agreed to pay him for the wrestling coaching assignment.

---

[1] The parties have interchangeably referred to both October 31 and November 1, 2000 as Kelly's termination date. In their appellate briefs, both sides assert that October 31, 2000 was Kelly's termination date, and we will assume that Kelly was terminated on that date. Further, while there is evidence in the record indicating that the School District initially only suspended Kelly from his coaching assignments, with his actual termination not occurring until November 29, 2000, the parties have in effect stipulated that the termination occurred on October 31, 2000. We will accept the parties' stipulation since the date of termination is not material to the issues raised by these appeals.

In July 2001, Kelly filed a petition in state court against the School District and Simpson under 42 U.S.C. § 1983, alleging that they terminated him from his coaching assignments without notice or a hearing, and that his termination was in violation of his right to procedural due process under the Fourteenth Amendment. Kelly also alleged that the School District breached the terms of the Contract by terminating him without proper cause. [2] The School District and Simpson removed Kelly's state-court case to the United States District Court for the Western District of Oklahoma. After both sides filed motions for summary judgment, the district court: (1) entered a judgment in the amount of $10,000 in favor of Kelly and against the School District on Kelly's procedural due process claim; [3] (2) entered a judgment for a reasonable attorney's fee in the amount of $25,000 in favor of Kelly and against the School District based on the parties' stipulation that Kelly was the prevailing party on the procedural due process claim for purposes of 42 U.S.C. § 1988; (3) entered a judgment in favor of Simpson on Kelly's procedural due process claim on the basis of qualified immunity; and (4) denied the School District's motion for summary judgment

---

[2]    In his state-court petition, Kelly also asserted First Amendment and tortious interference claims.  In response to defendants' motion for summary judgment, Kelly confessed judgment in favor of defendants on the First Amendment and tortious interference claims, and they are not at issue in these appeals.

[3]    Although defendants have denied liability with respect to Kelly's procedural due process claim, they have stipulated that Kelly incurred damages in the amount of $10,000 for purposes of his procedural due process claim.

with respect to Kelly's breach of contract claim. The court subsequently dismissed the breach of contract claim without prejudice based on an agreement of the parties.

## II.

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

It is undisputed that the School District relied exclusively on the "[w]ithout notice at any time for cause" provision in the Contract when it terminated Kelly's coaching assignments. It is also undisputed that the School District did not provide Kelly with a post-termination hearing.[4] As a result, the dispositive issue

---

[4] Kelly does not dispute that he received a constitutionally adequate

(continued...)

in these appeals is a legal one, and it is whether the Contract granted Kelly a property interest in his coaching assignments that is protected by the Due Process Clause of the Fourteenth Amendment such that Kelly was entitled to a post-termination hearing. *See Calhoun v. Gaines*, 982 F.2d 1470, 1473, 1476-77 (10th Cir. 1992) (holding that "[a] public employee faced with termination is entitled to procedural due process if he or she can demonstrate that such termination implicates a property interest protected by the Due Process Clause," and that "in cases where the pretermination [hearing] is less elaborate, a full-blown, adversarial post-termination hearing, held at a meaningful time, is necessary to determine the ultimate propriety of the discharge").

In *Calhoun*, this court recognized that

> a public employee may acquire a constitutionally protected property right in continued employment. Such a property right derives from that employee's legitimate claim of entitlement to continued employment, which arises from independent sources such as state laws, rules or understandings that secure benefits to employees. This Court has previously noted that such independent sources may include: a state or federal statute; a municipal charter or ordinance; an express or implied contract; a written contract with tenure provisions; or a contract "implied" from policies and practices of a particular institution.

*Id.* at 1473-74 (citations omitted). We have also recognized, however,

---

[4](...continued)
pretermination hearing. *See* Aplt. App. at 24, 159. Consequently, the adequacy of the pretermination hearing is not at issue in these appeals.

-6-

that procedural protections alone do not create a claim of entitlement to continued public employment. Rather, a legitimate claim of entitlement to continued public employment arises only when there are substantive restrictions on the ability of the employer to terminate the employee.

*Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1129-1130 (10th Cir. 2001).

The district court began its analysis of the property interest issue by distinguishing the cases the School District was relying on to support its "claim that, because [Kelly's] coaching duties were considered an 'extra-duty assignment,' he had no legitimate claim of entitlement to those duties under Oklahoma law." Aplt. App. at 194. The district court distinguished the cases on the ground that they involved teachers who were seeking to renew expired coaching assignments based on property interests that were allegedly created by state statutes. *Id.* at 194-95 (discussing and distinguishing *Maupin v. Indep. Sch. Dist. No. 26 of Ottawa County*, 632 P.2d 396 (Okla. 1981), *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228 (10th Cir. 1998), and *Mindemann v. Indep. Sch. Dist. No. 6 of Caddo County*, 771 P.2d 996 (Okla. 1989)). By contrast, Kelly is claiming a property interest in his coaching assignments based on an express contract that: (1) was still in effect at the time of his termination; and (2) specifically restricted the ability of the School District to terminate his coaching assignments. *Id.* at 195-96.

After distinguishing the cases relied on by the School District, the district court concluded that Kelly "had, under the facts of this case, a legitimate property interest in continued employment during the balance of the contract term." *Id.* at 194. The court based its conclusion on the fact that the "[C]ontract restricted the [School] District's ability to terminate [Kelly's] coaching duties during its term unless the termination was for cause or upon thirty days notice." *Id.* at 196. Thus, according to the district court, Kelly "was entitled to . . . a post-termination hearing to determine whether the cause alleged for his firing was supported by sufficient evidence," and the School District's "failure to grant [Kelly] a post-termination hearing denied [Kelly] his constitutional right to procedural due process." *Id.*

We agree with the district court that *Maupin*, *Lancaster*, and *Mindemann* are distinguishable and do not dictate the result in this case. We also agree that, under the specific circumstances of this case, Kelly had a property interest in his coaching assignments and was therefore entitled to a post-termination hearing. As support for this holding, we adopt the reasoning of the Ninth Circuit in *FDIC v. Henderson*, 940 F.2d 465 (9th Cir. 1991).

In *Henderson*, a bank employee was terminated for cause without a hearing pursuant to an employment contract that provided for termination at will, subject to a ninety-day notice requirement, or, alternatively, termination for cause, with

-8-

no notice requirement. *Id.* at 470, n.8. The bank subsequently brought an action against the employee for money due and to recover on several loans. *Id.* at 470. In response to the bank's action, the employee asserted a counterclaim under 42 U.S.C. § 1983 against a state banking official who was involved in his termination, claiming, among other things, that he was deprived of a property interest in his continued employment without due process of law as a result of the official's actions. *Id.* at 467, 470, 474. Although the Ninth Circuit affirmed the entry of summary judgment in favor of the state official on the ground that he was entitled to qualified immunity, it concluded that the employee had been deprived of a property interest without due process. *Id.* at 475-77. As the court explained:

> [Defendant] argues that, because [plaintiff's] contract contained an at-will provision, it gave rise to no protected property interest. We think this interpretation of [plaintiff's] contract is too simplistic. It is true that the contract contains an at-will provision, but that provision required that [plaintiff] be given ninety days notice if he was to be terminated pursuant to it. In a very real sense, then, this was a conditional at-will provision, one that could only be exercised if accompanied by the requisite notice.

> That is not to say, however, that [plaintiff's] contract was a for-cause employment contract. Instead, [plaintiff] had a hybrid contract that combined a for-cause provision with a conditional at-will provision. As such, it only gave rise to a "legitimate claim of entitlement" to ninety days of continued employment. Each day during his tenure with [the Bank], the Bank had the option of giving [plaintiff] notice, and ninety days after receiving such notice, [plaintiff] had no legally cognizable property interest in continued employment. Put another way, [plaintiff] could only be terminated within that ninety-day period for cause; after that period, his contract gave rise to no protected property interest.

*Id.* at 476.

Likewise, we conclude in this case that, based on the termination provisions in the Contract, Kelly had a legitimate claim of entitlement to thirty days of continued employment with respect to his coaching assignments, and that, unless and until the School District gave the required thirty days prior notice and the thirty-day period expired, the coaching assignments could be terminated only for cause. Consequently, we agree with the district court that the School District violated Kelly's right to procedural due process by failing to grant him a post-termination hearing. Accordingly, we affirm the district court's entry of summary judgment in favor of Kelly and against the School District on the procedural due process claim.

Finally, even though we have concluded that Kelly's right to procedural due process was violated, Simpson is nonetheless entitled to qualified immunity if she can establish that her conduct in denying Kelly a post-termination hearing did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003) (quotation omitted). On this issue, we agree with the district court that, "based on the state of the law as discussed" in the district court's order, "it would [not have been] clear to a reasonable [Oklahoma] school official, such as defendant Simpson, that her conduct in terminating [Kelly's] extra-duty coaching

assignment[s] without a hearing was unlawful." Aplt. App. at 197. Thus, we agree with the district court that Simpson is entitled to qualified immunity on Kelly's procedural due process claim, and we affirm the entry of summary judgment in favor of Simpson.

The order entered by the district court on August 7, 2002 and the amended judgment entered by the district court on August 15, 2003 are AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge